PD-1406-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/16/2015 7:38:26 AM
Accepted 2/17/2015 7:54:57 AM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOSE RAMIRO DELAROSA, *APPELLANT* | § § § | CCA No. PD-1406–14 |
| V. | § § | COA No. 05-14-01020-CR |
| THE STATE OF TEXAS, *APPELLEE* | § § § | TC No. F14–52888-T |

*APPEALED FROM CAUSE NUMBER F14-52888-T IN THE 283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS; THE HONORABLE RICK MAGNIS, JUDGE PRESIDING; APPEAL DISMISSED FOR LACK OF JURISDICTION BY THE HONORABLE FIFTH COURT OF APPEALS IN CAUSE NUMBER 05-14-01020-CR.*

§ § §

## STATE'S OPENING MERIT BRIEF ON STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

MICHAEL R. CASILLAS, Assistant
Criminal District Attorney,
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600/FAX (214) 653-3643
State Bar No. 03967500
Michael.Casillas@dallascounty.org
Mcasillas@dallascounty.org

## SUBJECT INDEX/TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . 8

    i) The Petition-Based Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    ii) The Motion-Based Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    i) The Petition-Based Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A) In Light Of The Binding Precedential Decisions From This
        Court And The Texas Supreme Court Interpreting Tex. R. App.
        P. 47.1 And The Other Rules Of Appellate Procedure That Were
        Expressly Cited By The State, The Fifth Court Clearly Erred By
        Dismissing The Case For Want Of Jurisdiction Without Having
        Addressed In Any Manner The Issues Raised By The State And
        Necessary To The Disposition Of The Appeal Regarding How
        Resort To The Abatement Process Was Necessary To Determine
        The Intent Of The Trial Court, Which Would Determine Whether
        The Fifth Court Did Or Did Not Actually Have Jurisdiction. . . . . . . . . . . 12

        B) In Light Of How Taylor, 247 S.W.3d at 223-24 Was Cited To
        The Fifth Court And How Taylor, 247 S.W.3d at 223-25 Is In
        Complete Harmony With The Substantial Body Of Jurisprudence
        Establishing The Principle That Courts Always Have Jurisdiction
        To Determine Whether They Have Jurisdiction, The Fifth Court
        Clearly Erred By Summarily Dismissing The Case For Want Of
        Jurisdiction Without Having First Made Use Of The Abatement
        Process To Determine The Intent Of The Trial Court, Which

Would Determine Whether The Fifth Court Did Or Did Not
Have Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii) The Motion-Based Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

A) In Light Of The Judgment Attached To Delarosa's Dismissal
Motion And All The Cases Cited In The State's Response To
Delarosa's Dismissal Motion (Including Garza v. State), This
Court Should Deny Delarosa's Dismissal Motion And Should
Clarify Whether The State's Timely Filing Of Its Petition For
Discretionary Review Vested This Court With Sole And Exclusive
Jurisdiction Until This Court Ruled On The State's Petition For
Discretionary Review Or Whether A Lower Court May Divest
This Court Of Its Jurisdiction After This Court's Jurisdiction
Has Already Vested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B) The Record Before This Court Is Sufficient To Show That
The Presumption Of Regularity In No Way Applies To The
Judgment Upon Which Delarosa's Dismissal Motion Is Based. . . . . . . . . 24

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE/PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# INDEX OF AUTHORITIES

**CASES**                                                                          **PAGES**

Beedy v. State, 250 S.W.3d 107 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . 22

Bushell v. Dean, 803 S.W.2d 711 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Crown Life Ins. Co. v. Est. Of Gonzalez, 820
        S.W.2d 121 (Tex. 1991)(*per curiam*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Davis v. State, 956 S.W.2d 555 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . 25,28

Delarosa v. State, No.05-14-01020-CR, 2014 Tex. App.
        LEXIS 11034 (Tex. App. – Dallas October 2,
        2014, pet. granted)(not designated for publication) . . . . . . . . . . . . . . . . *passim*

Drew v. State, 743 S.W.2d 207 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . 28

Ex Parte Caldwell, 383 S.W. 587 (Tex.
        Crim. App. 1964)(op. on reh'g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ex Parte Paprskar, 573 S.W.2d 525 (Tex. Crim. App.
        1978), *overruled on other grounds*, Weiner v.
        State, 653 S.W.2d 786 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . 17,21

Ex Parte Shaw, 395 S.W.3d 819 (Tex. Crim. App.  2013) . . . . . . . . . . . . 26,27,28,34

Ex Parte Sledge, 391 S.W.3d 104 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . 31

Gallagher v. Fire Ins. Exchange, 950
        S.W.2d  370 (Tex. 1997)(*per curiam*) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gambill v. State, 692 S.W.2d
        106 (Tex. Crim. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Garcia v. Dial, 596 S.W.2d 524 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . . . . 28

Garza v. State, 896 S.W.2d 192 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . *passim*

Gilley v. State, 418 S.W.3d 114 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . 22

Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . 22

Johnson v. State, 938 S.W.2d 65 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . 15,16

Lapasnick v. State, 784 S.W.2d 366 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . 25

Lapointe v. State, 225 SW.3d 513 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . 26

Light v. State, 15 S.W.3d 104 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . 15,16

Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . 31

Morris v. State, 301 S.W.3d 281 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . 22

Morrow v. Corbin, 62 S.W.2d 641 (Tex. 1933) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Olivo v. State, 918 S.W.2d 519 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . 17,21,22

Schneider v. State, 594 S.W.2d 415 (Tex.
        Crim. App. [Panel Op.] 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21,29

Skillern v. State, 890 S.W.2d 849 (Tex.
        App. – Austin 1994, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,28

State ex rel. Cobb v. Godfrey, 739
        S.W.2d 47 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 20,31

State ex rel. McNamara v. Clark, 187 S.W. 760 (1915) . . . . . . . . . . . . . . . . . . . 29

State ex rel. Wilson v. Briggs, 351 S.W.2d 892 (1961) . . . . . . . . . . . . . . . . . . . 29

State v. Adams, 930 S.W.2d 88 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . 27,28,34

State v. Bates, 889 S.W.2d 306 (Tex. Crim. App. 1994) . . . . . . . . . . . . . 26,27,28,34

State v. Garza, 931 S.W.2d 560 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . 20,31

State v. Henson, 573 S.W.2d 548 (Tex. Crim. App. 1978) . . . . . . . . . . . . . 17,18,21

State v. Roberts, 940 S.W.2d 655 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . 17,21

State v. Ross, 953 S.W.2d 748 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . 17,21

Stine v. State, 908 S.W.2d 429 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . 31

Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . *passim*

Taylor v. State, No. 05-06-01076-CR, 2008 Tex. App.
    LEXIS 6981 (Tex. App. – Dallas September
    19, 2008, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . 12

Weiner v. State, 653 S.W.2d 786 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . 17

Westergren v. Banales, 773 S.W.2d 764 (Tex.
    App. – Corpus Christi 1989, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## ARTICLES, RULES, CODES, AND CONSTITUTIONS

Tex. Const. art. V, §5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Tex. R. App. P. 9.4(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Tex. R. App. P. 9.4(i)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Tex. R. App. P. 21.8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,31

Tex. R. App. P. 21.8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,31

Tex. R. App. P. 44.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15,18,19,24,33

Tex. R. App. P. 44.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. R. App. P. 47.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii,9,12,15,16

IN THE TEXAS COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOSE RAMIRO DELAROSA, | § | CCA No. PD-1406–14 |
| APPELLANT | § | |
| | § | |
| V. | § | COA No. 05-14-01020-CR |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | TC No. F14-52888-T |

*APPEALED FROM CAUSE NUMBER F14-52888-T IN THE 283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS; THE HONORABLE RICK MAGNIS, JUDGE PRESIDING; APPEAL DISMISSED FOR LACK OF JURISDICTION BY THE HONORABLE FIFTH COURT OF APPEALS IN CAUSE NUMBER 05-14-01020-CR.*

TO THE HONORABLE TEXAS COURT OF CRIMINAL APPEALS:

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The primary flaw at the heart of the decision of the Fifth Court of Appeals ("the Fifth Court") concerns the way in which the Fifth Court rejected the State's request to make use of the abatement process. Moreover, the aforementioned primary flaw was the result of the combination of: 1) the assumption that the trial court had actually intended to enter an order that granted Appellant a new trial with; 2) the failure to acknowledge the State's arguments pertaining to the presence of the other documents that may well have been indicative of the trial court's intent for Appellant to seek redress via the appellate process. The primary flaw was exacerbated by the manner in

1

which the decision of the Fifth Court ignored the State's arguments in support of use of the abatement process, arguments that directly cited Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008) and portions of the relevant Texas Rules of Appellate Procedure. Finally, the consequences of the primary flaw have been magnified by the matters related to Appellant's dismissal motion and the State's response thereto.

While this Court originally concluded that oral argument should not be granted, the State respectfully submits that this Court should reconsider the earlier denial of oral argument and should grant the parties the privilege of presenting oral argument to discuss how adherence to Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008) would have permitted the development of a record that would have left no doubt regarding the trial court's intended rulings and would have avoided the thorny jurisdictional thicket that could only have occurred as a result of the potential events upon which Appellant's dismissal motion is based. Accordingly, the State hereby asks this Court to reconsider its previous denial of oral argument and to grant the parties the privilege of presenting oral argument to this Court to provide guidance for this Court's resolution of the issues raised not only by the State's petition for discretionary review, but also by Appellant's dismissal motion and the State's response thereto.

## PRELIMINARY STATEMENT OF THE CASE

Appellant/Respondent ("Delarosa") was charged via indictment with unauthorized use of a motor vehicle (UUMV). (CR: 6, 41-47; RR-3: 6-7). Delarosa entered a plea of not guilty, but was ultimately convicted of UUMV by the jury. (CR: 5, 47, 52-53; RR-3: 6-7, 70-71). The jury sentenced Delarosa to imprisonment in the state jail for a period of 18 months and also imposed a $1000.00 fine. (CR: 5, 36, 51-53; RR-3: 93).

The State's evidence was undisputed regarding how – within a period of not more than 4 hours – the victim's car was stolen and Delarosa was arrested after he had been observed driving the victim's stolen vehicle. (RR-3: 8-9, 15-16, 51). The State's evidence was absolutely undisputed regarding how Officer Raul Moreno had investigated the original vehicle theft and had also apprehended Delarosa in the act of driving the stolen vehicle. (RR-3: 8-9, 15-16). The record was undisputed regarding how a video recording from Officer Moreno's police car showed Delarosa being removed from the stolen car. (RR-3: 39).

While two other passengers were present, Officer Moreno was able to establish that Appellant had admitted – without any prompting or questioning – that the two passengers had been unaware that the vehicle had been stolen. (RR-3: 31-32). Officer Moreno also established that Delarosa then claimed that the stolen car was his aunt's

3

car. (RR-3: 32). The victim established that Delarosa was not her nephew, that she did not know Delarosa, and that she had not given Delarosa any permission relative to using her car. (RR-3: 56-57).

The jury returned its punishment verdict on July 8, 2014. (RR-3: 1, 106). On July 9, 2014, the trial court certified Delorosa's appeal. (CR: 58). On August 1, 2014, Delorosa filed his notice of appeal and the trial court appointed an attorney to represent Delarosa "in prosecuting his/her appeal." (CR: 61). On August 6, 2014, Delarosa filed a motion for new trial that alleged only that the verdict was contrary to the law and evidence. (CR: 64).

On September 5, 2014, the Clerk's Record was filed with the Fifth Court. On September 22, 2014, Delarosa filed a motion with the Fifth Court asking the Fifth Court to dismiss the appeal for want of jurisdiction because the trial court had entered an order granting Delarosa's motion for new trial. On that same date, the State filed with the Fifth Court a motion asking the Fifth Court to abate the case for the trial court to clarify whether it had intended for Delarosa to receive a new trial or to seek redress via the appellate process.

The face of the order that was part of the motion for new trial contained an area where the judge could indicate a ruling by circling either and option designated as "(granted)" or an option designated as "(overruled)." (CR: 64). While the order

4

portion of the motion for new trial was signed by the trial court, the trial court's interlineation on the "(granted)" option did not encircle the entire "(granted)" option, but actually consisted of a curling arc with a hole in the center, the lines of which crossed through the letters "g" and "r" that began the word "granted" and also crossed through the letters "e" and "d" that completed the word "granted," while also almost completely within the outer parameters of the set of parentheses surrounding the word "granted."[1]  (CR: 64).   Based on the combination of: 1) the documents that had certified Delarosa's right to appeal; 2) the failure of the docket sheet to reflect that the motion for new trial had even been filed (must less ruled on in any manner); and 3) the manner in which the motion to dismiss had been filed by Delarosa some six weeks after the Clerk's Record had been filed, the State was not certain whether the interlineation on the "(granted)" option was intended to indicate that the "(granted)" option had been chosen (and thus indicated that Delarosa had been granted or new trial) or stricken through (and thus indicated that Delarosa had not been granted a new trial).

Despite the State's arguments regarding why the abatement process should be employed, the Fifth Court dismissed the appeal for want of jurisdiction.  <u>Delarosa v.</u>

---

[1]A copy of Delarosa's motion for new trial and the order contained therein appears at Tab B of the State's Petition For Discretionary Review.  *See* State's Petition For Discretionary Review, at Tab B.

State, No.05-14-01020-CR, 2014 Tex. App. LEXIS 11034 (Tex. App. – Dallas October 2, 2014, pet. granted)(not designated for publication). While the Fifth Court dismissed the case, the Fifth Court in no way, shape, or form addressed the State's arguments regarding how the record was not clear regarding whether the trial court had actually granted Delarosa a new trial. Delarosa, No.05-14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2.

The State timely filed its petition for discretionary review with this Court on October 16, 2014. Delarosa filed a response to the State's petition for discretionary review on October 22, 2014.

On January 28, 2015, this Court granted the State's petition for discretionary review, but refused to grant the parties the privilege of presenting oral argument to this Court. On February 6, 2015, Delarosa filed a motion to dismiss the State's previously-granted petition for discretionary review because a purported plea bargain agreement had resulted in the lack of any justiciable issue. On February 9, 2015, the State filed a response to Delarosa's dismissal motion.

The State's response informed this Court that Delarosa's dismissal motion actually presented this Court with a jurisdictional issue (as opposed to an issue of whether any justiciable issue still existed). The basis for the State's contention that a jurisdictional issue had been presented was the manner in which the record was

6

undisputed that the judgment upon which Delarosa was relying was issued at a time when this Court's jurisdiction had been invoked according to <u>Garza v. State</u>, 896 S.W.2d 192 (Tex. Crim. App. 1995).

The State's response also informed this Court that the undersigned prosecutor had a substantial basis for a good faith belief that the judgment upon which Delarosa was relying did not encompass all the relevant facts of which this Court should at least be aware before issuing any ruling granting Delarosa's dismissal motion. In summary, the undersigned prosecutor had and has a substantial basis for a good faith belief that Delarosa had rejected a plea bargain offer that had been extended by the trial prosecutor reflected in the judgment, that the trial prosecutor reflected in the judgment had never participated in any plea bargain agreement that had been both consummated between the parties and accepted by the trial court, and that the plea bargain documents had been tendered to the trial court and processed as the result of some type of mistake or misunderstanding.[2]

Accordingly, the issues before this Court concern whether the Fifth Court erred by dismissing the case without even having addressed the issues raised by the State and necessary to the appeal's disposition involving why resort to the abatement process was justified, as well as the issue of whether a trial court may seek to deprive this Court of

---

[2]*See* State's Response/Motion Regarding Delarosa's Dismissal Motion, at pp. 11-15.

jurisdiction once this Court's jurisdiction has been properly invoked. For the sake of brevity and clarity, the State will refer to the abatement-related issues as the petition-based issues and to the issues stemming from Delarosa's dismissal motion as the motion-based issues. In presenting the State's arguments, the State will first discuss the petition-based issues before then discussing the motion-based issues.

### SUMMARY STATEMENT OF THE ISSUES PRESENTED

#### i) The Petition-Based Issues

In regard to the petition-based issues, the record before the Fifth Court contained conflicting indicia regarding whether the trial court's intent had been to grant a new trial or for Delarosa to pursue any remedies available to him via the appellate process. Accordingly, the record before the Fifth Court in the instant case was almost identical to that which had been before the Fifth Court in the case of Taylor v. State, 247 S.W.3d 223 (Tex. Crim. App. 2008).

Despite the State's motion asking the Fifth Court to adhere to Taylor and make use of the abatement process to have the trial court make clear what its true intent had been, the Fifth Court dismissed the case for want of jurisdiction. Delarosa, No.05-14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2. Moreover, the Fifth Court dismissed the case without even addressing the State's arguments that use of the abatement process was consistent with the goal of judicial economy, that the

8

conflicting documents had prevented the case's proper presentation to the Fifth Court, and that the relevant rules of appellate procedure were to be interpreted liberally so that inaccuracies in the appellate record that could be corrected by the trial court would be corrected by the trial court and such that the application of the relevant rules of appellate procedure resulted in the creation of accurate appellate records that truly and accurately reflected the proceedings that had occurred in the trial court.[3] Delarosa, No.05-14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2.

Accordingly, the petition-based issues presented to this Court the error of the Fifth Court in violating Tex. R. App. P. 47.1 by disposing of the case without even addressing the issues raised by the State and necessary to the appeal's disposition regarding how the Fifth Court – consistent with Taylor – had been vested with jurisdiction to abate the case for the trial court to explain what its true intent had been and how the Fifth Court should have used the abatement process because doing so would have been in complete compliance with: 1) Taylor, 2) the relevant rules of appellate procedure; and 3) the binding precedential legal authority cited in the State's abatement motion that mandated that liberal interpretations be afforded the relevant rules of appellate procedure upon which the State was relying.

---

[3]See State's Abatement Motion, at pp. 3-6.

9

## ii) The Motion-Based Issues

In regard to the motion-based issues, the record before this Court leaves no doubt that the trial court attempted to dispose of the case at a time that was not only after the State had already filed the petition for discretionary review in a timely manner, but also during the time that this Court's decision relative to the State's petition for discretionary review was still pending. In responding to Delarosa's dismissal motion, the State's response/motion relied primarily on an opinion from this Court that was almost 20 years old, an opinion that expressly stated, "Just as the timely filing of a notice of appeal vests the appellate courts with jurisdiction to consider the appeal, the timely filing of a petition for discretionary review vests this Court with jurisdiction to review the judgment of the Court of Appeals." Garza v. State, 896 S.W.2d 192, 194-95 (Tex. Crim. App. 1995). The State's response/motion also cited jurisprudence regarding how the presumption of regularity could not apply to the judgment relied upon by Delarosa and how the parties could not confer jurisdiction by agreement or waiver if such jurisdiction did not previously exist. Accordingly, the motion-based issues have presented this Court with the opportunity to clarify whether invocation of this Court's jurisdiction under Garza renders this Court the court of exclusive jurisdiction or whether this Court may be divested of its already-invoked jurisdiction through absolutely no action of this Court's own doing. Obviously, it is

10

the State's position that permitting some lower court to divest this Court of its previously-vested jurisdiction is wholly inconsistent with not only Garza, but also with the Texas Constitution, which assigns to this Court the position of being the highest criminal court in the State and the ultimate arbiter of criminal law matters.

For all the aforementioned reasons, this Court should conclude that the Fifth Court erred by refusing to follow Taylor and make use of the abatement process. Furthermore, this Court should – consistent with Garza – conclude that the timely invocation of this Court's jurisdiction vested this Court with exclusive jurisdiction and that this Court cannot be divested of its exclusive jurisdiction by the acts of a lower court that are committed while this Court is vested with such exclusive jurisdiction.

11

## ARGUMENT AND AUTHORITIES

### i) The Petition-Based Issues

**A) In Light Of The Binding Precedential Decisions From This Court And The Texas Supreme Court Interpreting Tex. R. App. P. 47.1 And The Other Rules Of Appellate Procedure That Were Expressly Cited By The State, The Fifth Court Clearly Erred By Dismissing The Case For Want Of Jurisdiction Without Having Addressed In Any Manner The Issues Raised By The State And Necessary To The Disposition Of The Appeal Regarding How Resort To The Abatement Process Was Necessary To Determine The Intent Of The Trial Court, Which Would Determine Whether The Fifth Court Did Or Did Not Actually Have Jurisdiction.**

In substance, the State's petition for discretionary review contended that the Fifth Court violated Tex. R. App. P. 47.1, various other provisions of the Texas Rules of Appellate Procedure, and numerous binding precedents regarding not only how intermediate appellate courts must address every issue raised that is necessary to the disposition of the appeal, but also how the Fifth Court had jurisdiction to make use of the abatement process – and should have made use of the abatement process – to determine whether the Fifth Court did or did not have jurisdiction to address the merits of any appellate issue or issues Delarosa might choose to raise.

Citing Taylor v. State, No. 05-06-01076-CR, 2008 Tex. App. LEXIS 6981, at *2 (Tex. App. – Dallas September 19, 2008, no pet.)(not designated for publication), the State's abatement motion informed the Fifth Court that the Fifth Court's own

12

jurisprudence reflected that situations did occur in which an order that had seemed to grant a new trial had actually been an inadvertent mistake on the part of the trial court (as opposed to an actual ruling of the trial court).[4] The State's abatement motion informed the Fifth Court that the Clerk's Record contained potentially inconsistent documents in the form of a certification of an appeal, an order that appointed counsel to represent Delarosa "in prosecuting his/her appeal herein," an order that might have granted Delarosa's motion for new trial, and a docket sheet that contained absolutely no mention of the motion for new trial (much less whether the trial court had entered a ruling relative thereto).[5]

Citing Taylor v. State, 247 S.W.3d 223, 223-24 (Tex. Crim. App. 2008), the State's abatement motion informed the Fifth Court that this Court had previously concluded that the abatement process should be used when the appellate record contained conflicting indicia regarding whether the trial court had intended to grant a new trial or had intended for a convicted appellant to seek redress via the appellate process.[6] The State's abatement motion argued to the Fifth Court that the situation in the present case was highly similar to the situation that had existed in Taylor, 247

---

[4]*See* State's Abatement Motion, at p. 3.

[5]*See* State's Abatement Motion, at pp. 3-4.

[6]*See* State's Abatement Motion, at pp. 3-4.

S.W.3d at 223-24, such that the Fifth Court should make use of the abatement process to learn the trial court's true intent (and thus avoid repeating the error had led to this Court's issuance of <u>Taylor</u>, 247 S.W.3d at 223, *i.e.*, summarily dismissing the case for want of jurisdiction without having made use of the abatement process).[7] Finally, the State's abatement motion cited (among other authorities) Tex. R. App. P. 44.4 (upon which this Court specifically relied in <u>Taylor</u>, 247 S.W.3d at 224) and <u>Gallagher v. Fire Ins. Exchange</u>, 950 S.W.2d 370 (Tex. 1997)(*per curiam*) and <u>Crown Life Ins. Co. v. Est. Of Gonzalez</u>, 820 S.W.2d 121 (Tex. 1991)(*per curiam*) in support of the conclusion that the Texas Supreme Court has mandated that the rules of appellate procedure that govern correction of the appellate record must be interpreted liberally.[8]

In the highly analogous <u>Taylor</u> case, this Court – citing Tex. R. App. P. 44.4 (among other authority) – expressly wrote, "Faced with a conflicting record concerning its jurisdiction, the court of appeals **should have abated** to clarify which action was intended by the trial court." <u>Taylor</u>, 247 S.W.3d at 224 (emphasis added). Even though the State's abatement motion had expressly brought both <u>Taylor</u>, 247 S.W.3d at 223-24 and Tex. R. App. P. 44.4 to the Fifth Court's attention, the Fifth Court summarily dismissed Delorosa's case for want of jurisdiction. *See* <u>Delarosa</u>, No. 05-

---

[7]*See* State's Abatement Motion, at pp. 4-6.

[8]*See* State's Abatement Motion, at pp. 4-6.

14

14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2. In summarily dismissing Delarosa's case, the Fifth Court made no mention of the issues raised by the State that were necessary to the appeal's disposition regarding Tex. R. App. P. 44.4 and/or Taylor, 247 S.W.3d at 223-24 (which had concluded – based on a record highly similar to that involved herein – that the abatement process should have been employed to determine whether the Fifth Court did or did not have jurisdiction over the appeal). *See* Delarosa, No. 05-14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2.

According to the literal language of the directly-relevant provision of the Texas Rules of Appellate Procedure, "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." Tex. R. App. P. 47.1. This Court and the Texas Supreme Court have both made clear that the failure of a court of appeals to comply with the mandatory language of Tex. R. App. P. 47.1 can constitute sufficient grounds for ordering that the judgment of the court of appeals be either reversed or vacated. *See* Bushell v. Dean, 803 S.W.2d 711 (Tex. 1991); Light v. State, 15 S.W.3d 104, 105 (Tex. Crim. App. 2000); Johnson v. State, 938 S.W.2d 65 (Tex. Crim. App. 1997).

In light of the Fifth Court's total and complete failure to even address the issues raised by the State regarding the similar appellate records in the instant case and the Taylor case and how the record in the Taylor case should have resulted in an abatement

15

of the case, the Fifth Court herein undoubtedly violated not only the mandatory language of Tex. R. App. P. 47.1, but also the binding precedent that this Court's Taylor opinion constitutes. *See, e.g.*,Tex. R. App. P. 47.1; Light, 15 S.W.3d at 105; Johnson, 938 S.W.2d at 65. Consistent with Taylor, 247 S.W.3d at 224 and based solely on the manner in which the Fifth Court failed to comply with the mandatory language of Tex. R. App. P. 47.1, this Court should at least vacate the judgment of the Fifth Court and remand the case to the Fifth Court with instructions directing the Fifth Court "to abate the appeal and order appropriate findings by the trial court." Taylor, 247 S.W.3d at 224.

While the Fifth Court's judgment should be vacated based solely on the manner in which the Fifth Court failed to comply with Tex. R. App. P. 47.1, additional grounds exist upon which this Court should order the judgment of the Fifth Court vacated.

**B) In Light Of How <u>Taylor</u>, 247 S.W.3d at 223-24 Was Cited To The Fifth Court And How <u>Taylor</u>, 247 S.W.3d at 223-25 Is In Complete Harmony With The Substantial Body Of Jurisprudence Establishing The Principle That Courts Always Have Jurisdiction To Determine Whether They Have Jurisdiction, The Fifth Court Clearly Erred By Summarily Dismissing The Case For Want Of Jurisdiction Without Having First Made Use Of The Abatement Process To Determine The Intent Of The Trial Court, Which Would Determine Whether The Fifth Court Did Or Did Not Have Jurisdiction.**

As was noted earlier, <u>Taylor</u> made clear that – in regard to situations where the appellate record left doubt as to the jurisdiction of the intermediate appellate court – the intermediate appellate court should not summarily dismiss the case for want of jurisdiction, but should employ the abatement process so as to ascertain whether the appellate court did or did not have jurisdiction. *See* <u>Taylor</u>, 247 S.W.3d at 224. As such <u>Taylor</u> is in no way inconsistent with the long-standing body of jurisprudence that has well established the principle that courts always have jurisdiction to determine whether they have jurisdiction, which such jurisprudence was cited to this Court in the State's petition for discretionary review. *See, e.g.*, <u>State v. Ross</u>, 953 S.W.2d 748, 750 n.1 (Tex. Crim. App. 1997), *citing* <u>State v. Roberts</u>, 940 S.W.2d 655, 656-57 (Tex. Crim. App. 1996); <u>Olivo v. State</u>, 918 S.W.2d 519, 523 (Tex. Crim. App. 1996), *citing* <u>Ex Parte Paprskar</u>, 573 S.W.2d 525, 527 (Tex. Crim. App. 1978), *overruled on other grounds*, <u>Weiner v. State</u>, 653 S.W.2d 786, 786 n.1 (Tex. Crim. App. 1983); <u>State v.</u>

17

Henson, 573 S.W.2d 548, 549 (Tex. Crim. App. 1978).[9]

Moreover, in reaching the aforementioned conclusion, the opinion in Taylor, 247 S.W.3d at 223-24 cited Tex. R. App. P. 44.4, which prohibits intermediate appellate courts from affirming or reversing the judgment or dismissing the appeal if the record contains a defect or defects that prevent the proper presentation of the case to the intermediate appellate court and the trial court could correct the error. *See* Tex. R. App. P. 44.4. Furthermore, the rule of appellate procedure cited in Taylor, 247 S.W.3d at 223-24 places a dual duty on intermediate appellate courts to first direct the trial court to correct the error and to then address the case as if the error had not occurred. *See* Tex. R. App. P. 44.4(b).

The State's abatement motion cited Taylor, 247 S.W.3d at 223-24 and Tex. R. App. P. 44.4 and urged the Fifth Court to make use of the abatement process to determine whether the Fifth Court did or did not have jurisdiction.[10] Had the case been abated, the trial court could have clarified whether the interlineation it had entered on the "(granted)" portion of the order had been intended to indicate that the "(granted)" option had been circled (so as to indicate that Delarosa had been granted a new trial) or that the "(granted)" option had been struck through (so as to indicate

---

[9]*See* State's Petition For Discretionary Review, at p. 9.

[10]*See* State's Abatement Motion, at pp. 4-6.

that Delarosa had not been granted a new trial).

If the trial court's interlineation had not been intended to indicate that Delarosa had been granted a new trial, then the unexplained (and less-than clear) nature of the interlineation clearly functioned in a manner that prevented the case's proper presentation to the Fifth Court, such that the Fifth Court violated the dictates of Tex. R. App. P. 44.4 and erred by having failed to follow the dictates of Taylor, 247 S.W.3d at 223-24 regarding making use of the abatement process to ascertain what the trial court had intended when made the less-than clear interlineation to the order contained in Delarosa's motion for new trial. Moreover, the judgment Delarosa has tendered to this Court in support of his dismissal motion further supports the State's position that the trial court's interlineation on the "(granted)"'option did not necessarily constitute the entry of an order that granted Delarosa's motion for new trial.

As noted earlier, Delarosa filed a motion to dismiss that contends that his case has been the subject of a plea bargain agreement. *See* State's Opening Brief, at p. 6, *supra*. Attached to Delarosa's dismissal motion is a purported judgment that bears a date of December 17, 2014. Above the judgment's area designated for the trial court's signature appears the notation, "Motion for new trial granted per Judge Rick Magnis." As the State noted in its response to Delarosa's dismissal motion, if the trial court had intended for the interlineation of the "(granted)" option from August 2014 to indicate

19

that Delarosa's motion for new trial had been granted, the trial court would have had no need to indicate in the judgment of December 17, 2014 that Delarosa's motion for new trial was being granted.[11]

In the alternative, if the trial court's granting of a new trial on December 17, 2014 is in regard to the original judgment of July 9, 2014, any such ruling would be an outright nullity. Any entry of an order granting a new trial on December 17, 2014 would be wholly improper (and of absolutely no force and effect) relative to the original judgment of July 9, 2014 because the period of time between July 9, 2014 and December 17, 2014 far exceeds the time limit of 75 days within which any trial court must rule on a motion for new trial in order to avoid losing jurisdiction to enter any ruling on a motion for new trial. *See* Tex. R. App. P. 21.8(a); Tex. R. App. P. 21.8(c); State v. Garza, 931 S.W.2d 560, 562 (Tex. Crim. App. 1996), *citing* State ex rel. Cobb v. Godfrey, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987). Accordingly, the aforementioned notation in the judgment of December 17, 2014 not only supports the conclusion that no new trial was granted in August 2014, but also provides support for the conclusion that the presumption of regularity has absolutely no application relative to the judgment of December 17, 2014. *See, e.g.*, Schneider v. State, 594 S.W.2d 415,

---

[11]*See* State's Response/Motion Regarding Delarosa's Dismissal Motion, at pp. 8-9.

418 (Tex. Crim. App. [Panel Op.] 1980).[12]

Furthermore, the Fifth Court's use of the abatement process to determine whether it did or did not have jurisdiction would have been completely and totally in accord with not only Taylor, 247 S.W.3d at 223-24, but also with all the aforementioned authority establishing that courts always have jurisdiction to determine if they have jurisdiction. *See, e.g.*, Ross, 953 S.W.2d at 750 n.1, *citing* Roberts, 940 S.W.2d at 656-57; Olivo, 918 S.W.2d at 523, *citing* Ex Parte Paprskar, 573 S.W.2d at 527; Henson, 573 S.W.2d at 549. Since the Fifth Court summarily dismissed Delarosa's case for want of jurisdiction and did so by ignoring the State's arguments regarding why the abatement process should be used, the Fifth Court failed to follow all the aforementioned authority establishing that the Fifth Court had jurisdiction to make use of the abatement process for the purpose of determining whether the Fifth Court had jurisdiction to address the merits of any appellate issues Delarosa might choose to raise. Accordingly, the judgment of the Fifth Court also merits being reversed or vacated because of the manner in which the Fifth Court erred and violated the legal authority establishing that the Fifth Court had jurisdiction to determine

_____

[12]The matters referenced in the State's Response to Delarosa's dismissal motion regarding the basis for the undersigned prosecutor's good faith belief that the judgment of December 17, 2014 failed to encompass all the relevant facts pertaining to the questions of its validity and accuracy provide only more reasons for concluding that the presumption of regularity fails to apply to the judgment of December 17, 2014. *See* State's Response/Motion Regarding Delarosa's Dismissal Motion, at pp. 11-15.

21

whether it had jurisdiction.

Additionally, the promotion of judicial economy (which the State expressly cited to the Fifth Court) also supports reversing or vacating the Fifth Court's erroneous judgment.[13]   This Court has not only deemed the promotion of judicial economy "worthwhile," but also has repeatedly acknowledged that it expressly has an "interest in fostering judicial economy and conserving scarce judicial resources."   Beedy v. State, 250 S.W.3d 107, 114 (Tex. Crim. App. 2008); Olivo, 918 S.W.2d at 525-26 n. 8; *see* Morris v. State, 301 S.W.3d 281, 295 n. 48 (Tex. Crim. App. 2009).  This Court has even issued opinions in which it has cited judicial economy in support of reaching a certain conclusion and/or in support of choosing to address a certain matter presented by the case.  *See, e.g.*, Gilley v. State, 418 S.W.3d 114, 119-20 (Tex. Crim. App. 2014); Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); Gambill v. State, 692 S.W.2d 106, 107 (Tex. Crim. App. 1985).

The Fifth Court dismissed Delarosa's case on October 2, 2014.  *See* Delarosa, No. 05-14-01020-CR, 2014 Tex. App. LEXIS 11034, at *1-2.  As discussed earlier, Delarosa's motion to dismiss the State's previously-granted petition for discretionary review includes a judgment from December 17, 2014 that contains a notation that Delarosa's motion for new trial was granted on that date, which provides some support

---

[13]*See* State's Abatement Motion, at p. 3.

22

for the conclusion that no new trial had been granted back in August 2014. *See* State's Opening Brief, at p. 18, *supra*. Had the Fifth Court abated the case with a specific deadline and had the trial court explained that a new trial had been granted by the signing of the order of August 2014, such a series of events would have made clear that the Fifth Court did not have jurisdiction. Had the Fifth Court abated the case with a specific deadline and had the trial court explained that no new trial had been granted, Delarosa's appeal before the Fifth Court would have then proceeded immediately because the record would have been clear that the Fifth Court did indeed have jurisdiction and the complete and accurate appellate record would have already been before the Fifth Court. Under either outcome, judicial economy would have been served by resort to the abatement process, especially since there would have been no reason why the trial court could not have clarified the nature of its ruling in a prompt and timely fashion.

Accordingly, the worthwhile goal of promoting judicial economy provides only more support for the conclusion that this Court should issue an opinion not only vacating the erroneous judgment of the Fifth Court, but also directing all intermediate appellate courts to resort to the abatement process at least under scenarios such as that presented herein and as in Taylor, 247 S.W.3d at 223-24. While the foregoing discussion has demonstrated why this Court should – consistent with Taylor, 247

23

S.W.3d at 223-24 and Tex. R. App. P. 44.4 – vacate the Fifth Court's judgment, the ensuing discussion will demonstrate why this Court should not dismiss the State's previously-granted petition for discretionary review based on any lack of a justiciable issue, but should address the jurisdictional issue that Delarosa's dismissal motion has squarely placed before this Court.

### ii) The Motion-Based Issues

**A) In Light Of The Judgment Attached To Delarosa's Dismissal Motion And All The Cases Cited In The State's Response To Delarosa's Dismissal Motion (Including Garza v. State), This Court Should Deny Delarosa's Dismissal Motion And Should Clarify Whether The State's Timely Filing Of Its Petition For Discretionary Review Vested This Court With Sole And Exclusive Jurisdiction Until This Court Ruled On The State's Petition For Discretionary Review.**

**B) The Record Before This Court Is Sufficient To Show That The Presumption Of Regularity In No Way Applies To The Judgment Upon Which Delarosa's Dismissal Motion Is Based.**

As noted earlier, Delarosa filed a dismissal motion and attached judgment that purported to show that Delarosa's case was the subject of a plea bargain agreement on December 17, 2014. As an earlier portion of the instant State's Opening Brief has shown, the record before this Court is undisputed regarding how the purported judgment of December 17, 2014 was entered after the State's petition for discretionary had been timely filed and during the time that the State's petition for discretionary review remained pending before this Court. *See* State's Opening Brief, at p. 6, *supra*.

24

Accordingly, Delarosa's dismissal motion and attached judgment and the State's response thereto have placed squarely before this Court the issue of whether this Court's jurisdiction – once invoked – is sole and exclusive or whether a lower court may not only somehow reclaim or share jurisdiction, but also act to divest this Court of its jurisdiction.

In light of the record before this Court, this Court should afford the judgment upon which Delarosa relies no presumption of regularity. In light of the record before this Court and the cases cited in the State's response to Delarosa's dismissal motion, this Court should use the instant case to take the opportunity to make clear that invocation of this Court's jurisdiction vests this Court with exclusive jurisdiction unless and until this Court divests itself of that exclusive jurisdiction.

The concept of the trial court's jurisdiction "includes the power [of the trial court] to determine either rightfully or wrongfully." Morrow v. Corbin, 62 S.W.2d 641, 644 (Tex. 1933); Lapasnick v. State, 784 S.W.2d 366, 367 (Tex. Crim. App. 1990). The concept of the trial court's jurisdiction also encompasses the authority of the trial court "to render a particular kind of judgment." Davis v. State, 956 S.W.2d 555, 558 (Tex. Crim. App. 1997); *see* Skillern v. State, 890 S.W.2d 849, 859 (Tex. App. – Austin 1994, pet. ref'd)(jurisdiction of the trial court concerns the authority or power of the trial court to try the case). The State's timely filing of the petition for

discretionary review with this Court on October 16, 2014 and the ongoing pendency before this Court of the State's petition for discretionary review until the date of January 28, 2015 deprived the trial court of jurisdiction over the case on the date of December 17, 2014.

Almost 20 years ago, this Court wrote, "Just as the timely filing of a notice of appeal vests the appellate courts with jurisdiction to consider the appeal, the timely filing of a petition for discretionary review vests this Court with jurisdiction to review the judgment of the Court of Appeals." Garza v. State, 896 S.W.2d 192, 194-95 (Tex. Crim. App. 1995); *but see* Lapointe v. State, 225 SW.3d 513, 517 n. 11 (Tex. Crim. App. 2007)(noting that this Court had refused to grant Lapointe's second ground, which had contended that the pendency of his petition for discretionary review had deprived the trial court of jurisdiction to conduct a retrospective *in camera* hearing). This Court has recognized that the State's timely filing of a petition for discretionary review with this Court deprived the intermediate appellate court of jurisdiction to withdraw its previously-issued opinion in favor of a subsequently-issued opinion. *See* Ex Parte Shaw, 395 S.W.3d 819, 819 (Tex. Crim. App. 2013).

In a later case, this Court noted that the earlier case of State v. Bates, 889 S.W.2d 306, 310-11 (Tex. Crim. App. 1994) had "involved the question of whether a trial court can reclaim jurisdiction of a cause after the Rules of Appellate Procedure

26

mandated that cause had passed beyond its jurisdiction." State v. Adams, 930 S.W.2d 88, 92 n.6 (Tex. Crim. App. 1996). In Bates, this Court concluded that the trial court had lacked jurisdiction to enter an order granting a new trial because the order that purported to grant the new trial had been entered beyond the deadline set out in the Texas Rules of Appellate Procedure. Bates, 889 S.W.2d at 310. Accordingly, Bates not only bears out the accuracy of the characterization afforded it by this Court in Adams, but also supports the conclusion that a trial court cannot reclaim jurisdiction over a case when the case has passed beyond its jurisdiction according to the Texas Rules of Appellate Procedure.

The State's timely filing with this Court of the petition discretionary review vested this Court with jurisdiction over the case. *See* Garza, 896 S.W.2d at 194-95. Since jurisdiction over the case had passed to this Court and was still with this Court on December 17, 2014, the trial court lacked jurisdiction to dispose of the case on that date (or on any other date while the State's petition for discretionary review remained pending) and could not reclaim jurisdiction over the case until this Court denied the State's petition for discretionary review (which never happened). *See, e.g.,* Adams, 930 S.W.2d at 92 n.6, *citing* Bates, 889 S.W.2d at 310-11. Consistent with Ex Parte Shaw, 395 S.W.3d at 819, if the filing and pendency of the State's petition for discretionary review deprives an intermediate appellate court of jurisdiction, by what

form of "logic" would that same filing and pendency somehow fail to deprive a trial court of jurisdiction to dispose of the case?

Also, the law is clear that, in situations where there was no jurisdiction, the power of the trial court to act is as absent as if it did not exist. *See* Drew v. State, 743 S.W.2d 207, 223 (Tex. Crim. App. 1987), *citing*: Garcia v. Dial, 596 S.W.2d 524, 528 (Tex. Crim. App. 1980) and Ex Parte Caldwell, 383 S.W. 587, 589 (Tex. Crim. App. 1964)(op. on reh'g). If jurisdiction over the case was exclusively with this Court by virtue of the State's timely filing of the petition for discretionary review, the trial court could not dispose of the case in any manner because it lacked jurisdiction to render any judgment whatsoever. *See, e.g.*, Davis, 956 S.W.2d at 558 ; Skillern, 890 S.W.2d at 859.

Consistent with not only Garza, 896 S.W.2d at 194-95, but also with all the aforementioned legal authority, the filing and pendency of the State's petition for discretionary review deprived the trial court of any jurisdiction to dispose of the case on December 17, 2014. To conclude otherwise would constitute a decision that a trial court and this Court could simultaneously be vested with jurisdiction over the same case, which is at least inconsistent with – if not actually wholly contrary to – the law contained in the cited cases of Garza, Adams, Bates, and Ex Parte Shaw. Moreover, to conclude otherwise would establish that this Court – the highest criminal court in

28

the State under the Texas Constitution – was capable of being vested with jurisdiction, but was also capable of having that already-vested jurisdiction taken away by the action of a lower court, which hardly seems consistent with how the levels of power should operate between a lower court and the court that the Texas Constitution designates as the ultimate arbiter of criminal law matters in the State of Texas. *See* Tex. Const. art. V, §5; State ex rel. Wilson v. Briggs, 351 S.W.2d 892, 894 (1961); State ex rel. McNamara v. Clark, 187 S.W. 760, 762 (1915); Westergren v. Banales, 773 S.W.2d 764, 766 (Tex. App. – Corpus Christi 1989, no writ)(noting that the Texas Court of Criminal Appeals "is the final arbiter of criminal law matters.").

While a presumption of regularity normally applies to judgments from and proceedings in the lower courts, the presumption has no application in the instant case because the appellate record before this Court contains the affirmative indicia that makes absolutely and transparently clear that the purported judgment of December 17, 2014 was issued when this Court had jurisdiction over the case and the trial court had no jurisdiction to dispose of the case. *See, e.g.*, Schneider, 594 S.W.2d at 418. Additionally, the purported judgment contains other matters that not only destroy even the potential applicability of the presumption of regularity, but also shed doubt as to whether the trial court had actually granted a motion for new trial on August 6, 2014 (which constituted the very reason why the State had asked the Fifth Court to make use

29

of the abatement process in the first place).

The original judgment that Appellant appealed to the Fifth Court reflects "July 9, 2014" as the date of judgment. (CR: 52-53). The trial court's order that may or may not have been intended to grant Appellant's motion for new trial could have been signed no earlier than "August 6, 2014" (because the order was file-stamped on that date, but the trial court's signature on the order is not dated). (CR: 64). Again, the docket sheet contains nothing to indicate that any motion for new trial was even filed, much less whether the trial court ever ruled on any motion for new trial. (CR: 5). However, in the judgment of December 17, 2014 upon which Appellant's dismissal motion relies, there is a notation that appears close to the trial court's signature, a notation that reads, "Motion for new trial granted per Judge Rick Magnis."

If the trial court had actually intended for the order of August 6, 2014 to function as an order that had already granted Appellant a new trial, then the trial court would have had no need to indicate in the judgment of December 17, 2014 that a new trial was being granted. Accordingly, the aforementioned notation in the judgment of December 17, 2014 actually provides more support for the conclusion that the abatement process should have been used to determine whether the trial court had intended to grant Appellant a new trial back in August 2014.

Moreover, the trial court's granting of a new trial on December 17, 2014 would

30

be wholly improper (and of absolutely no force and effect) relative to the original judgment of July 9, 2014 because the period of time between July 9, 2014 and December 17, 2014 far exceeds the time limit of 75 days within which any trial court must rule on a motion for new trial in order to avoid losing jurisdiction to enter any ruling on a motion for new trial. *See* Tex. R. App. P. 21.8(a); Tex R. App. P. 21.8(c); Garza, 931 S.W.2d at 562, *citing* State ex rel. Cobb, 739 S.W.2d at 49. Accordingly, the aforementioned notation in the judgment of December 17, 2014 provides only more support for the conclusion that the presumption of regularity has absolutely no application to the judgment of December 17, 2014. Finally, it also must not be overlooked that jurisdiction to dispose of the case could not have been conferred by the parties if such jurisdiction had not already existed. *See, e.g.*, Stine v. State, 908 S.W.2d 429, 431 (Tex. Crim. App. 1995)("It is also fundamental that the parties of a suit can neither confer nor waive jurisdiction by agreement or consent."), *citing* Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993); *see also, e.g.,* Ex Parte Sledge, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013). Accordingly, the invocation of this Court's jurisdiction by the timely filing of the State's petition for discretionary review would be wholly inconsistent with jurisdiction somehow being conferred on the trial court by the consent of the parties. *See* Garza, 896 S.W.2d at 194-95.

Based on all the aforementioned legal authority, dismissal of the State's petition

for discretionary review fails to be justified by the contentions in Appellant's dismissal motion. Moreover, if it is the position of this Court that its jurisdiction may somehow be simultaneously shared with a lower court, then the contentions in Appellant's dismissal motion have presented this Court not only with more reasons why this Court should refrain from dismissing the previously-granted State's petition for discretionary review, but also with additional legal issues that this Court might want to address in resolving the contentions in the previously-granted State's petition for discretionary review.

## CONCLUSION AND PRAYER

Since the Fifth Court denied the State's abatement motion and dismissed Delarosa's case for want of jurisdiction without having even addressed in any manner the issues raised by the State and necessary to the appeal's disposition that were based on Taylor, 247 S.W.3d at 223-24 and Tex. R. App. P. 44.4 and which pertained directly to whether the Fifth Court did or did not have jurisdiction, this Court should – consistent with Taylor, 247 S.W.3d at 223-24 – vacate the Fifth Court's judgment through the issuance of an opinion that makes clear that the Fifth Court should have not only addressed the issues raised by the State and necessary to the appeal's disposition, but also that the Fifth Court should have made use of the abatement process to ascertain whether the Fifth Court did or did not have jurisdiction. In accord with Taylor, 247 S.W.3d at 223-24, this Court's opinion vacating the Fifth Court's judgment should also expressly direct the Fifth Court to abate the case to the trial court for the trial court to make clear whether the interlineation on the "(granted)" option of the order was meant to grant Delarosa a new trial or to indicate that no new trial was being granted to Delarosa.

Since Delarosa's dismissal motion and attached judgment and the State's response thereto have squarely placed before this Court the issue of whether this Court's jurisdiction – once invoked – is sole and exclusive, this Court's opinion

33

vacating the Fifth Court's judgment  should – consistent with <u>Garza</u>, 896 S.W.2d at 194-95, <u>Bates</u>, 889 S.W.2d at 310-11, <u>Adams</u>, 930 S.W.2d at 92 n. 6, and <u>Ex Parte Shaw</u>, 395 S.W.3d at 819  – leave absolutely no doubt regarding how the timely filing of a petition for discretionary review vests this Court with exclusive jurisdiction up to and until the point that this Court reaches a decision that the timely-filed petition for discretionary review should be refused.  Any conclusion regarding the invocation of this Court's jurisdiction that permitted any lower court to divest this Court of its previously-vested jurisdiction would be wholly inconsistent with – if not violative of – the provision of the Texas Constitution that assigns this Court the position as the highest criminal court in the State of Texas and the final arbiter of all criminal law matters.

For all the aforementioned reasons and based on all the legal authority cited in conjunction therewith, the State prays that the erroneous judgment of the Fifth Court in this case will be vacated or reversed and that the exclusive nature of this Court's jurisdiction  – once it is invoked  – will be established in terms that cannot be doubted or misinterpreted.

Respectfully submitted,

SUSAN  HAWK
Criminal District Attorney
Dallas County, Texas

34

_Michael R. Casillas_
_____
MICHAEL R. CASILLAS, Assistant
Criminal District Attorney,
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600/FAX (214) 653-3643
State Bar No. 03967500
Michael.Casillas@dallascounty.org
Mcasillas@dallascounty.org

## CERTIFICATE/PROOF OF SERVICE

I hereby certify that – no later than February 27, 2015 – a true, electronically-formatted copy of the instant State's Opening Brief has been served on opposing counsel, the Hon. Leslie McFarlane, and has also been served on the State's Prosecuting Attorney, the Hon. Lisa McMinn, by use of the electronic service function that accompanies the State's filing of the instant State's Opening Brief with this Court through the electronic filing service provider to which the State subscribes.

_Michael R. Casillas_
_____
MICHAEL R. CASILLAS

35

## CERTIFICATE OF COMPLIANCE

By affixing my signature below, I hereby certify – based on the word count function of the word-processing software program that was used in connection with the preparation of the instant State's Opening Brief – that the entirety of the body of the instant State's Opening Brief is comprised of 8,291 words. Additionally, I hereby certify that the relevant portions of the instant State's Opening Brief – as defined by Tex. R. App. P. 9.4(i)(1) – are comprised of 5,131 words. Accordingly, I also hereby certify that the number of words in the instant State's Opening Brief is in no way in excess of the 15,000-word limit specified in Tex. R. App. P. 9.4(i)(2)(B).

*Michael R. Casillas*

_____
MICHAEL R. CASILLAS